### LESE v. MILLER et al.

(Supreme Court, Appellate Division, First Department. April 11, 1902.)

WILLS—CONSTRUCTION.

Testator devised all his property to his executors in trust to invest in their joint names to collect the profits, and, after deducting expenses, pay the same to his widow during her natural life, and after her decease to convey to his children share and share alike, the issue of any such children to take per stirpes the share that their deceased parent would have taken if living. One of the daughters and her sole issue predeceased the widow. Held, that no interest in the property ever vested in either of them, and consequently no interest could descend from either to the daughter's husband.

Appeal from special term, New York county.

Action by Louis Lese against Orlando A. Miller and others. From a judgment entered on a decision rendered at special term (68 N. Y. Supp. 554), dismissing plaintiff's complaint, and directing plaintiff to perform the agreement therein set forth, etc., plaintiff appeals. Affirmed.

This action is brought for the purpose of recovering a deposit made by the plaintiff with the defendants upon the execution of a contract for the sale by the defendants to the plaintiff of the premises No. 117 Lewis street, in

the city of New York, together with counsel fees and disbursements incurred by the plaintiff upon the examination of the title to said premises, upon the ground that the title to the same tendered by the defendants to the plaintiff was defective and unmarketable. Upon the trial all the material facts were admitted by a stipulation between the parties, from which stipulation the following appears: William H. Miller died on the 23d day of March, 1870, seised of the premises in question, and leaving a last will and testament, which was duly admitted to probate by the surrogate of the county of New York. He left, him surviving, his widow, Mary Ann Miller, and four children, Orlando A. Miller, Mary A. Bailey, Caroline A. Mandeville (afterwards Caroline A. Adams), Harriet Van Ripper, and a stepson, William H. White. Harriet Van Ripper died intestate on January 3, 1874, leaving, her surviving, her husband, and an infant son, Thomas Van Ripper, who died intestate on the 14th day of April, 1875, leaving his father, Thomas Van Ripper, who has since remarried. The stepson, William H. White, or William H. Miller, as he was also called, died intestate December 3, 1896, leaving, him surviving, two children, Mary E. Maurer and William H. Miller. The widow above named, Mary Ann Miller, died February 3, 1899. The point in dispute between the parties is the interest that Harriet Van Ripper or her issue took under the will of the testator, William H. Miller; the plaintiff claiming that she took a vested remainder, which descended to her infant son, and through him at his death to his father, Thomas Van Ripper, and the defendants claiming that whatever interest she or her issue took under the will of her father was contingent, and ceased absolutely upon the death of herself and her infant son. In his will William H. Miller devises his residuary estate, real and personal, including the premises in question, as follows: "III. All the rest, residue, and remainder of my estate, real, personal, and mixed, of whatsoever kind or description, and wheresoever situated, I give, devise, and bequeath unto my executrix and executor hereinafter named, or to the survivors of them, in trust: (1) To collect, get in, and receive that part of said estate as may consist of money, stocks, bonds, or similar securities, and to convert all the securities into money; (2) to invest and reinvest the same in their joint names as such executrix and executor in good and substantial securities, consisting of United States bonds, or bonds and mortgages on improved real estate in the cities of New York and Brooklyn worth at least double the amount of said bonds and mortgages; (3) to collect and receive the rents, issues, and profits of the same, and of such real estate as I may be possessed of at my death; (4) to pay over the same, after deducting the necessary expenses for collection, to my beloved wife, Mary Ann Miller, during the term of her natural life; (5) after the decease of my said wife, then to convey, assign, and transfer and set over all the rest, residue, and remainder of my estate, wheresoever situated, unto my children, including among said children my stepson William H. White (being a son of my wife by a former marriage), in equal portions, share and share alike (the issue of any such children, should any have died before the death of my said wife, taking per stirpes the share that their deceased parent would have taken if living), to have and to hold the same for their own proper benefit, use, and behoof, forever."

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and LAUGHLIN, JJ.

Emil Goldmark, for appellant.
Milton Hopkins, for respondents.

HATCH, J.   As no two wills are alike, there can be, in the nature of the case, no fixed rule for the construction of all.   Each will must be construed as a de novo instrument, and while it is true that there are some general rules and canons of construction which are fixed and certain, the application of which will usually enable courts to arrive at an equitable and just conclusion, yet ultimately the question

comes to rest upon the intention of the testator in the particular case, giving force and effect to the will as a whole, and, in cases of ambiguity and doubt, resort may be had to the surroundings and conditions of the testator and those affected by the will in order to properly interpret the language used. The will in the present case furnishes no exception to the general rule. Its construction, so far as the rights and interests of these parties are concerned, depends upon the intent of the testator as expressed by the language used in the third clause of the will and its various subdivisions. Neither the other parts of the will, nor the conditions of the parties, nor the circumstances surrounding the testator, shed any light upon the subject. It is therefore to be construed solely with respect to the language used. This clause creates an express trust in the executors, and vests title in them during the life of the widow to all of the property of the estate for certain purposes. There is no language used in the will which can be construed as a gift over to the children until after the death of the wife. Upon the death of the wife, the direction is then to convey the property to the testator's children, share and share alike, the issue of any such children who have died before the death of the wife to take per stirpes the share that their parent would have taken if living. Harriet Van Ripper predeceased the widow, leaving as issue one child. It is clear that no property vested in Harriet, because it could not be vested in her and the executors at the same time. Consequently, as she took nothing, nothing could descend to her issue. The latter was subject to the same infirmity under which Harriet labored. He also died prior to the death of the widow. Consequently he did not survive to the period of distribution, and nothing vested in him. This destroyed that branch of the family, unless it can be said that the husband of Harriet was her issue, and this will scarcely be claimed. The scheme of the testator seems to be plain and his intention clear to vest in the executors title to the property during the life of the wife, and to limit his gift over to the children who should be living at her death, and to the issue of any child then dead who should survive the decease of the wife. This seems to bring the case within the definition of a gift to a class as defined in Re Kimberly's Estate, 150 N. Y. 90, 44 N. E. 945, and is in consonance with the construction applied to a clause of a similar nature in Dougherty v. Thompson, 167 N. Y. 472, 60 N. E. 760.

As Harriet took nothing under the will, nothing descended from her to her heir, and, as such heir predeceased the widow, he also took nothing, and consequently nothing could descend from either to the husband of Harriet when the period of distribution arrived. It is the inevitable conclusion, therefore, that the persons who executed the contract to convey the real property had good title to the same, and were authorized to convey it.

The decision of the trial court was therefore right, and the judgment should be affirmed, with costs to the respondents. All concur.